## Case No. 6,898.

### HUNT v. ROUSMANIERE.

[2 Mason, 342.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1821.[2]

BILL IN EQUITY—AMENDMENT—MISTAKE OF LAW —RELIEF.

1. A court of equity may allow an amendment of a bill after deciding against the bill and allowing a demurrer on argument.

2. If a party takes a security for money, which is merely personal, instead of taking a mortgage on property, under a mistake of law, by all parties, that the former was as safe as the latter, a court of equity will not relieve the party, who took such security, and substitute for it a lien or mortgage on the property.

[Cited in Leavitt v. Palmer, 3 N. Y. 29.]

[See note at end of case.]

Leave having been granted to amend the bill under the intimation of the court at the last term, the plaintiff [Clement S. Hunt] now filed an amendment to the bill. The amendment in substance stated, that on the day when the first letter of attorney was executed, and before its execution, the plaintiff and [Louis] Rousmaniere called upon counsel for advice, as to the most effectual mode of giving security to the plaintiff upon the vessel; that Rousmaniere then proposed to give a mortgage of the vessel with a power to sell, or an absolute bill of sale, taking back from the plaintiff a memorandum expressing the purpose for which the bill of sale was executed. But the parties were then advised by counsel, that a power of attorney, such as that, which was afterwards executed, would be as effectual and good security as a mortgage or bill of sale, and would prevent the necessity of changing the ship's papers at the custom-house, and of the plaintiff's taking immediate possession of the vessel upon her arrival from sea; and further, that upon the execution of the second letter of attorney, Rousmaniere again expressed his willingness to give any other security upon the schooner Industry, either by mortgage or bill of sale, if, in the opinion of counsel, such mode of security would be safer that such power of attorney; and that Rousmaniere executed both powers with the belief and intention, that they should give the plaintiff as full and perfect security as he could have by mortgage or bills of sale of the property; and the plaintiff so received them. To the bill so amended, the defendants renewed their demurrer, and the cause was set down for a hearing upon the demurrer, and argued at this time.

Hunter & Randolph, for respondents.

The learned and satisfactory decision of the honourable court upon the first bill settles the question, as to the nature and effect of the powers of attorney referred to in

that bill. They are decreed to be ineffectual either in law or equity for the purposes alleged. They died with their author. And the administrators, defendants in this case, are now compelled to regard Mr. Hunt as a mere creditor, as meritorious and as unfortunate as others, but not more so. He has no lien on the specific property referred to in the powers of attorney, and as administrators of an estate, admitted to be desperately insolvent, the respondents have but one duty to perform, viz. to be honest trustees to all the creditors, to resist all preferences, or priorities unsanctioned by law, and to set up for the general creditors all the guards and defences, which the law furnishes for their protection.

1st. The allowance of the amendment was the spontaneous act of the court, unsolicited by the plaintiffs, and unopposed by the defendants, only because the decision prevented opposition. But as this is but an interlocutory decree upon an incidental matter, now entirely in the power of the court to affirm or reverse, and a matter, that perhaps cannot be taken up to a higher court, it is with great deference submitted to the honourable court, that this allowance of an amendment, if upon reconsideration it be not sustainable, should be now rescinded, or, as is the course in chancery, the amended bill be permitted to be withdrawn from the file. The counsel for the defendants understood the law to be, that where a bill on demurrer is dismissed for want of equity on the merits of the case as stated, leave to amend the bill will not be granted. Lyon v. Tallmadge (decided by Chancellor Kent) 1 Johns. Ch. 184, 185; 2 P. Wms. 401; Id. 390.

But, 2d. The plaintiffs have not made the amendment the court expected or required. His honor in substance stated, that if through error, mistake, or accident, the complainant had been disappointed of the kind of security or transfer, the parties had intended, and this could be shown by facts, that he should not hesitate to let him in to take his chance for relief on an amended bill. Now the amended bill refers neither to accident. error, or mistake, or to any facts tending to prove their existence; it excludes and negatives the supposition of accident, error, or mistake. The whole matter was done upon advice, with the assistance of counsel learned in the law. The security, that the complainant ultimately received, was that which he preferred. He could then have taken that kind of security he seems now to desire. He had, undoubtedly, his own private and powerful inducements for the choice he made; all previous verbal negotiations and conferences were merged in the plain written security, viz. the powers of attorney. They were the most convenient for both parties; and so far was either party from being surprised or mistaken, that what was done appears as the judicious result of mutual and advised deliberation.

Neither party contemplated or had reference to the death of the other. It may be admitted, that it is the death of Rousmaniere alone, which has frustrated Hunt's expectation of indemnity; but where an event happens, without default on the other side, although expectation may be frustrated, though it may be grounded on the true intent of parties, equity will not give relief. 1 Ves. Sr. 98, 99; 2 Atk. 251.

3d. It is conceived by the defendants' counsel, that a review of all the leading cases, in which relief has been given by a court in chancery, would not furnish one in any degree analogous to the present, even if it could be admitted, that any mistake had taken place. In the case of Graves v. Boston Marine Ins. Co. the complainants grounded themselves upon the allegation, that their case was but the common one of a mistake in using inapt words to express the meaning of the parties (2 Cranch [6 U. S.] 430, and the cases there cited). White v. Nutts, 1 P. Wms. 61. The proof, as to the intention of one of the parties in that case, was perfectly satisfactory; and as to the other, it pressed so heavily on the court, that they acknowledged there were doubts and difficulties in the case. But they decided against relief in this unquestionably hard case; they shrunk from the peril of conforming a written instrument to the alleged intention of the party plaintiff upon a claim not asserted, until an event made it his interest so to do. In a case between the original parties, unaffected by death or insolvency, where no new and third party sought mere equality of condition, the court appear to have acted upon the principle, that they had before them a written instrument not in itself doubtful, and they repelled the recourse to parol testimony, or extraneous circumstances to create a doubt where the instrument itself was clear and explicit. It is admitted, that courts of equity have frequently in a variety of instances interfered on the ground of a mistake, or misconception of the parties. Coop. Eq. Pl. p. 141, and the cases there cited; 1 Ves. Sr. 456; 7 Brown, Parl. Cas. 204; 3 Atk. 388; 1 Brown, Ch. 358. But the amended bill, it must be repeated, puts an end to all doubt, negatives every notion of mistake, or misconception, and avers, that the instrument adopted, was so adopted in consequence of the advised and enlightened election of the present complainant. The complainant rejected a mortgage or bill of sale, though he might have obtained either; and the amended bill sets up this very rejection as a ground of relief, and refers to parol negotiations extinguished and discharged by the subsequent writing. Parkhurst v. Van Cortlandt, 1 Johns. Ch. 282. A mistake must be clearly and strongly proved, before the court can correct a deed or writing. Souverbye v. Arden, Id. 252. Equity will not interpose, if the fact was from its nature doubtful, or equally un-

known to both parties (1 Brown, Ch. 158); nor if the alleged mistake was the mistake of all the parties (2 Atk. 592; Malden v. Menill, Id. 8; 3 P. Wms. 127, in notes; 2 Atk. 203). A fortiori, where upon the statement of the party it appears, that, what was done, was no mistake or misconception in either party. It will not do to say it was the mistake of counsel. In the case of Pullen v. Ready, 2 Atk. 587, Lord Hardwicke in substance says, if parties act with counsel, the parties shall be supposed to be acquainted with the consequence of law, and that nothing is more mischievous, than to decree relief for an alleged mistake in a matter, in which, if there was any mistake, it was that of all the parties, and no one is more under an imposition than the other. See Lyon v. Richmond, 2 Johns. Ch. 60. The same counsel by the amended bill adheres, in fact, to his first opinion. That opinion was, that the powers of attorney were irrevocable, coupled with an interest, operating as effectually as a transfer and sale of the specific property, and giving a right and power to the attorney to take and sell, in spite of the death of the constituent. Upon this ground the original bill is framed. This opinion the decision of the court proves to be mistaken; and it is not easily conceivable, how the re-assertion of the same opinion in the amended bill, and that is all it contains, can entitle the complainant to the relief denied him on his original bill. Hunt trusted to the life of Rousmaniere for his security; that to which he trusted having failed, he is now entitled to as much as the general creditors, and to no more. It may likewise not be improper to suggest, that in cases of the kind, that the plaintiff would be willing to make this, though it may be competent for a defendant to shew a mistake, as matter of defence, and for the purpose of rebutting the plaintiff's equity, that a plaintiff in similar circumstances cannot do so. See opinion of Lord Redesdale in Clinan v. Cooke, 1 Schoales & L. 22, 33, 38, 39, and the cases there cited. The doctrine of the cases under the statute of fraud applies a fortiori, for by the common law an attorney must be made by deed. Co. Litt. 48; 2 Rolle, Abr. 8; 1 Bac. Abr. tit. "Authority," p. 518.

Searle & Hazard, for plaintiffs.

It does not appear by the record, that any decision has ever been had on the original bill. There is no entry or minute intimating, that any decree has ever been rendered, or even an argument delivered in the case. We know as counsel, that the honourable court expressed an opinion against the sufficiency of the bill, but, that opinion, or any decree founded upon it, was never filed, or ordered to be filed. The only entry upon record is, an order to amend, to which it does not appear, that there was any opposition. But, if at any time, there was any solidity in the objection of the learned counsel for the defendants, it surely comes too late. The bill has been amended without objection, and a demurrer filed to the amended bill, and it is now quite too late, it is presumed, to insist upon any irregularity in this respect. But the objection, at any time, would have been unfounded. After argument upon demurrer, and before judgment is entered upon record, the courts of law and equity may, in their discretion, and often do, permit amendments, when the justice of the case requires it. Mitf. Eq. Pl. 260; Tippet v. May, 1 Bos. & P. 411; Ramchander v. Hammond, 2 Johns. 200. And the authority cited by the defendants, from 5 Johns. Ch. 184, 185, admits the principle; and the reason, why the chancellor refused the motion to amend in that case, was, not, that it could not legally be allowed, but because the plaintiff, upon his own statement, had no merits, and could not by an amendment make his case any better.

The counsel for the defendant also insist, that the bill has not been amended conformably to the views of the court and, that the amended bill is no more than a reassertion of the sufficiency of the power of attorney, upon which they say the whole case is placed. They seem to insist, that the bill should admit explicitly the invalidity of the power, and that the plaintiff resorts exclusively to the parol contract for relief. But we did not understand the court as intimating any idea of the kind, or, that it was necessary expressly to admit any defect in the power.

The court was understood by us to express an opinion, that the power upon its face was not sufficient to create a lien or specific security or charge upon the vessel in question, and, that there were not facts enough stated in the bill from which they could legally infer such to have been the agreement and intention of the parties. And the bill was ordered to be amended, in order to bring upon the record the whole facts; and if upon the whole facts, a specific lien was created, the party should have the benefit of it, although the power itself was insufficient. The power was a part of the transaction, and a fact in the case, and ought certainly to have been stated. The whole facts are now displayed on the record, and it is believed in apt and legal form; and the entire contract distinctly stated. And if, upon the whole, it appears, that a specific lien was contracted for by the plaintiff, and promised by Rousmaniere, and that the loan was made on the faith of that lien, it is presumed the court will not permit the defendants to deprive the plaintiff of the kind of security he contracted for; merely because the kind of writing he received was defective. The bill asks for such relief as the nature of the case can afford. If the court are of opinion, that the plaintiff is entitled to relief, either on the ground of the power alone, or upon the power connected with the other proof, or upon the

parol contract alone, and exclusive of the power, the bill is so framed as to sustain a decree upon either ground. The whole case is displayed on the record and upon its broad ground, and equity can administer relief in any specific form, which its merits may require.

The bill as amended states, it is submitted, distinctly and explicitly the contract entered into by the parties, and the full and actual performance of it by the plaintiff. To the bill there is a demurrer, which clearly admits all the facts and allegations properly charged; the bill is admitted to be true, and the only question is, whether upon the whole case the plaintiff is upon principles of equity, entitled to relief. Mitf. Eq. Pl. 14, 172. But the hardship upon the general creditors is assigned as a reason, why specific relief should not be granted; and it is alleged, that the plaintiff is not for that reason entitled to the benefit he seeks. But is this the fact? From any thing, that appears in the case, the other creditors trusted to Rousmaniere's personal responsibility, and to his general funds, to be resorted to by ordinary course of law. They made no contract for specific security, and granted no loan upon the faith of it. But it is apparent, that the plaintiff would not trust to the personal responsibility of Rousmaniere, or his general funds, and Rousmaniere knew it. He trusted him on the faith of specific security. And the general creditors can experience no injury, nor have they cause to complain of hardship in relation to this negotiation, for they are benefited in the loan by an increase of the general funds to the full amount to which the plaintiff claims security.

It is also suggested by the defendants' counsel, that the plaintiff's expectation of indemnity was exclusively connected with Rousmaniere's life, and that this resort to equity is an after-thought arising from his unexpected death. We are at a loss to discover any pretence for such a suggestion. It is perfectly clear, that both parties intended a specific security, and both believed the power abundantly sufficient for the purpose. And in point of law the power as to specific lien, is, it is presumed, as valid now as in Rousmaniere's lifetime, for, it is submitte as a well settled principle of equity, (with perhaps very few exceptions, of which the case in question is not one) that when the party is holden to a specific execution of a contract, his representatives are equally holden. If the power is now defective in securing a lien, it was equally so in his life time. No legal or equitable right is in this respect lost by Rousmaniere's death. And surely every circumstance of the case evinces most clearly that the loan was never made upon the score of personal friendship, or personal honor. 2 Madd. 112; 1 Schoales & L. 272; 17 Ves. 489; 1 Madd. 41; 4 Bl. Comm. 472; 1 Anstr. 14.

The defendants' counsel assume as a fundamental principle, that the plaintiff is never permitted to show, by parol proof, a mistake or misapprehension in a written contract, the execution of which he seeks to enforce; and, that the rule, which admits mistakes, &c. in written instruments, to be corrected by parol evidence, is exclusively confined to the defendants, against whom the written instrument is enforced. It is true, that Lord Redesdale in the case of Clinan v. Cooke, 1 Schoales & L. 22, seems to be of that opinion; and in two or three other cases the same doctrine has been advanced, and relief refused upon that ground. But the case of Clinan v. Cooke, and it is believed, all the other cases, in which that doctrine has been established, were cases within the statute of frauds, and nearly all of them related to an interest in lands. And in all such cases parol proof, when offered to vary or materially affect a written contract, has been received with great circumspection and reserve. But the case at bar does not range within either of those classes of cases.

The counsel for the plaintiff, however, contend, that the rule stated by the defendants' counsel, is not founded in principle, that the rule of admitting parol proof to shew mistakes in writing is open alike to both parties. And in almost all the cases, where the plaintiff has failed when seeking the aid of parol proof, it was not because the rule was against him, but because his proof of mistake, &c. was not satisfactory. The case referred to [Graves v. Boston Marine Ins. Co.] 2 Cranch [6 U. S.] 419, is of this description. The court in that case adopted the principle we contend for, and would have undoubtedly afforded the plaintiff the relief he claimed, had he been able to have proved the mistake he alleged in the policy. The same principle is adopted in Getman v. Beardsley, 2 Johns. Ch. 274; Lyman v. United Ins. Co., Id. 630. And it is extremely difficult to perceive the reason or justice of the rule's not extending equally to both parties. If a mistake has happened injurious to a party, what matters it to justice, whether he be plaintiff or defendant? Are not both parties equally the objects of protection and regard? What becomes of even-handed justice, which it is said delights to dwell in courts of equity, if in dispensing her decrees, she extends to one party a rule of such vast importance, which she denies to the other? If the parties have fairly, and for a valuable consideration, made an explicit, distinct contract, in reducing which to writing, a mistake has happened, either by omission or otherwise, or by a misapprehension of the legal import and effect of the instrument, shall not either party equally have the benefit of rectifying the mistake? Where the plaintiff has fully and actually executed his part of the contract, and calls upon the defendant in equity to execute his part of it, can he be repelled by so preposterous a doctrine, that there is a mistake in the written instrument, which

absolves him in equity from the obligation of his contract? In some instances, perhaps, the plaintiff may have an imperfect remedy at law, but in many he might have none. And in some, though he had a remedy, it might, as in the present case, be a fruitless one, owing to the total insolvency of the delinquent. It is confidently ·submitted, that the rule as contended for by the defendants, is not to be found amongst the acknowledged doctrines of equity, but has been judicially repudiated from her courts. And if any doubts ever were entertained ·upon the subject, they are all dissipated by the learned decision of Chancellor Kent, in the case of Gillespie v. Moon, 2 Johns. Ch. 585, in ·which all the authorities are revised, and by which it ·is· clearly established, that the relief is coextensive with the mischief, and, that equity grants to the injured party, whether plaintiff or defendant, the benefit of the rule.

· But another objection is raised to our relief. It is stated, that when the fact from its nature is doubtful, or equally unknown to both parties, equity will not interpose. To this position, when correctly applied, there is no objection. The rule, it is apprehended, is this, that when the information, or ·means of information, touching a doubtful fact, is equally in the possession of both parties, and they choose to make a speculating agreement about the subject matter, to which that fact relates, they shall be bound by it, though the ultimate result may be essentially different from· the expectations of either party. But the principle has no kind of relation to the case at bar. Here was no doubtful or disputed fact; the loan, its amount ·and terms, the interest of Rousmaniere in the vessels, his agreement to mortgage, or pledge that interest, were at the· time, and still are, all clear undoubted facts. There is no doubt about any fact, on which the contract was predicated. There is none now, and the difficulty is not about the facts of the agreement, but about its execution by the defendants.

It is also said, that the plaintiff mistook his law in making his contract, and that equity never relieves against mistakes in the law. And it is probably correct, that when the parties with a full knowledge of the facts enter into a contract, they are not relieved, though under a mistake as to the law. But here was no mistake of the law in making this contract. The law was completely understood in relation to all the facts, on which this contract was founded. The parties knew the· loan, its terms, &c.; that Rousmaniere owned the vessels, and that he had a right by law to pledge them for security, and ·that by agreement he did pledge them. The mistake is, not in the facts, nor the law, nor in the contract, but in the remedy upon the contract. They believed the power of attorney was a legal mean to secure the agreed lien, and in this consists the mistake. There is, therefore, a complete legal contract, but by mistake the mode adopted for its execu-

tion is defective at law; and to supply that defect resort is had to this honourable court. The admission of parol evidence is objected to, on the ground, that all previous negotiations are extinguished and discharged by the writing. The position is undoubtedly correct in the sense, in which courts of equity and law apply it. Its legal and just import we understand to be this, that when the parties have definitively concluded a contract, all previous terms, propositions, and negotiations concerning it are discharged and extinguished; and this is equally true, whether the contract is in writing, or parol only. It does not follow, however, that the contract is extinguished, but the contrary. The contract clearly exists, and is· supposed· by all the authorities to exist, but is not to be affected by the negotiations of the parties, which ·preceded its final completion. And the error of the counsel seems to be, in not distinguishing between the contract itself, and these previous negotiations, which may have led to it. But if we correctly understand the import of the argument, the absurdity is placed still farther. It seems to be contended, that the contract is merged and extinguished in the writing. This surely has no foundation in ·principle or reason; for, if reducing the contract to writing is an extinguishment of it, the writing is a sort of felo de se, and is fatally destructive of the very thing it was intended to preserve. The rule is, we apprehend, that the parol evidence (not the contract) is merged in the writing. But the contract exists independently of the written evidence, although it is to be proved by that evidence, and by that only, unless a mistake of some kind is satisfactorily proved to exist in relation to it. And in the case at bar, there is not the color of pretence for saying, the power extinguished or merged the contract. The power looks to something future to be done by virtue of it, and pursuant to the contract, and was intended not as the contract, but as a mean, by which a future act was to be done in fulfilment of it by one of the parties. And it cannot be pretended that the parties meant, that the power should embrace the whole agreement between them on both sides. The agreement is not, and was not intended to be set out. The loan, the terms, the negotiable notes, all exist independently of the power, and are binding engagements. The power was intended as a mean in the hands of the plaintiff, to coerce Rousmaniere to the fulfilment of his agreement and at most intended as evidence of part of the contract only. And further, this principle is in conflict with the admission of the defendants' counsel in another part of the argument, and with the whole current of authorities, which establish the admissibility of parol proof to correct errors in the instrument; for if the parol contract is extinguished by the writing, and that alone is the very contract, all idea of mistake is utterly and necessarily excluded. The writing in that case

would be the original, and to admit parol proof would be, not to correct, but to alter, the original. And perhaps it may be even doubted, whether the power is the legal direct written evidence of any part of the contract. If A. sells his ship to B., and gives him a power of attorney to take possession of her, it can hardly be considered, that this power is the direct written evidence of the contract, of which the books speak, when treating on the subject. It is a power growing out of the contract, and given to aid its execution. The undisputed execution of the power is evidence of its being a voluntary act, and by inference proves it was agreed to be given, but is not the direct evidence of the contract itself. There is a difference between a contract to perform a particular thing, and the performance of that thing. Here the contract was for a lien on Rousmaniere's vessels by power of attorney or other instrument, and to secure that lien the power was given; and it is evidence of an after act intended to be done under the contract, rather than direct evidence of the contract itself. And the great difficulty upon the original bill was, it is presumed, that the power was too bald, and was no evidence of the contract for a lien; and that even connecting with it the other allegations there stated in the bill, enough did not appear to support a lien, or any agreement for one.

Another ground seems to be assumed in relation to this part of the case equally untenable. Although it seems to be admitted, that there was originally a contract for a lien by mortgage, bill of sale, or some other mode; yet it is insisted, that the power of attorney, when adopted, operated as an extinguishment, or at least as a waiver, of all other security; and the power, when received, reduced and narrowed down to that identical instrument the original contract for a lien in the same manner, and with like effect, as if the original legal contract was for that identical specific instrument, and nothing more. But this singular assumption is supported by nothing but the ingenuity of the learned counsel, and profound as that is, it cannot clothe with the garb of speciousness, so preposterous a proposition. The contract was for a legal and valid security on the vessels, and the parties by adopting this power did not change, nor mean to change, the contract, but to execute it in part. It was a mode, and the parties believed a good and sufficient mode, of securing the lien pursuant to the contract. It has now proved insufficient of itself. The contract, however, remains the same as at first, a contract for security, and wholly unexecuted. And if the instrument adopted by the parties is defective from error in its form or provisions, it clearly entitles the injured party to the interposition of the court.

The learned counsel for the defendants admit, that in some cases mistakes in a written instrument may be corrected by parol evidence. But they insist, that the present is not a case of this description, that here is no mistake, that the power contains the very language the parties intended it should contain, and that to grant relief would be in opposition to all the authorities. But it is confidently submitted, that the counsel have mistaken the rule upon this subject. From the tenor of their argument it seems they contend, that no relief can be granted, unless something is omitted, which was expressly agreed to be inserted, or something inserted more than was agreed to be; that the errors to be corrected are such as have occurred in omissions or additions in drawing the instrument, but not to errors in its legal import and effect; that if the language is used, which the parties intended, no relief can be had, although that language does not contain the legal intentions of the parties. But in principle, there is no foundation for this distinction, and is not, we apprehend, sustained by a single solitary adjudged case. If too much is inserted, or something is omitted in the instrument, it may be corrected by parol, because it does not contain the meaning and intention of the parties. And if every word and no more is inserted, which the parties designed to have inserted, and yet if those words do not embrace and import the meaning and intention of the parties, it is as clear a mistake and misconception, as the other, and the contract is as effectually defeated by the mistake in the one instance as the other. The true foundation of the principle for the admission of parol evidence is, that the instrument does not speak the legal, though it may the verbal, language of the parties; it does not speak the legal import of their contract as they intended it should. And whenever the intention of the parties will be defeated by a defect in the instrument, that defect may be proved and corrected by parol, whether it arises from omission or addition, or from the insufficient and inapt language and terms of the instrument. When it is satisfactorily proved by parol, that there is a mistake in the instrument as to its provisions, or a misconception of its legal import and effect, so that the intentions of the parties will in either instance be defeated, it is clearly a case of equity cognizance, and undoubtedly a subject of equitable relief. 2 Freem. 246, 281; Newl. Cont. 348, 349; 3 Ves. 399; 1 Johns. Ch. 607; 1 Ves. Sr. 317, 456; 1 Brown, Ch. 341; 1 P. Wms. 277, 334; 2 Vern. 564; 2 Atk. 203; 2 Eq. Cas. Abr. 16; Sugd. Vend. 481; 3 Atk. 388; 2 Ves. Jr. 151; 1 Ch. R. 78; 2 Vent. 367; 1 Vern. 37. Suppose a complete contract is made for the sale of an estate, and the full consideration is paid, and a deed satisfactory to the parties is drawn, and one which they both believe would pass the title, but it has no seal, and no title passes, will not equity on the bill of the grantee, order the deed executed anew, or the old

one sealed? Suppose the deed to be drawn exactly as the parties expected, but to contain no proper or apt words to pass a fee, will not the court correct the mistake or misconception? Suppose a release should be given, which the parties believed would pass the title, but the releasee being out of possession, and having no pre-existing interests in the premises, by the technical rules of the common law the release is a mere nullity, and the releasee takes nothing under it; will not the court correct this error? Suppose the contract is for the sale of an estate with warranty, but in drawing the deed there is no covenant of seisin. The grantor executes, and the grantee receives it from a belief of its sufficiency in all respects. When the error is discovered, is there a doubt, but that equity will order it corrected? Suppose an agreement is made for the sale of a registered vessel, warranted American, and to be conveyed as such with all the privileges of an American bottom, and the register is omitted in the bill of sale; the title to the vessel passes, but she is denationalized. Will not the court order the execution of a new bill of sale, with the insertion of the register? In all these instances the parties had the instruments drawn to their satisfaction and believed them to be sufficient. They are in the very language and terms the parties agreed to, but are defective in legal operation, and do not execute the intentions of the parties.

There is another ground, upon which the plaintiff is entitled to the benefit of his lien. The contract has on his part been fully performed, and although no writing had been made, he is entitled to the performance of it by the other party. Part performance has been considered as obviating the necessity of written proof, and gives to the performing party the benefit of specific relief against his negligent and faithless adversary. In several cases arising under the statute of frauds, and touching interest in land, it has been questioned, whether the payment of a small part of the consideration money would take a case out of the statute, as amounting to part performance. But in all or nearly all those cases, the payment was of what is called earnest money, to bind the bargain. The payment is rather in nature of a penalty or forfeiture, to induce the payer to a punctual performance, and is not in the nature of a substantial, beneficial payment of part of the consideration money. But even if the principle, that part payment does not exempt the case from the provisions of the statute, be correct, yet it is apprehended, that the principle does not extend to a case, where the contract stated in the bill is distinctly admitted, and where the full consideration has already been advanced and paid. Whenever the party has completely and fully executed his part of the contract, whether by payment of money, or other acts, the rule in equity is, we apprehend,

almost universal, to coerce the other party to a specific execution of the contract on his part. Newl. Cont. 181; 1 Ves. Sr. 82; 7 Ves. 341; 3 Atk. 1; 2 Ch. Cas. 135; 4 Ves. 720, 722; 1 Vern. 363; 3 Ch. R. 16; Toth. 67; Roberts, Frauds, 154; 1 P. Wms. 282, 277; 1 Madd. 301; 2 Eq. Cas. Abr. 48. Upon the whole, it is submitted to the court on the part of the complainant, that a contract for security on the vessels mentioned in the bill is fully admitted; that the contract is distinct and explicit in its terms, perfect and legal in its nature, and founded on a valuable consideration actually advanced and paid by the complainant; and, that by the soundest doctrines and rules in equity, he is entitled to the benefit of that security, and to a decree enforcing the execution of the contract, according to the manifest intention of the parties.

Hunter & Randolph, in reply.

The ingenious argument of the plaintiff's counsel has not produced conviction in our minds, nor in the least abated our confidence in the validity of our defence. Its logical merit upon its assumed facts is not denied, and the question it raises, is copiously illustrated and subtilely supported. But after all, it exhibits but a vigorous effort unduly to amplify equitable jurisdiction, and extend an unwarrantable relief in cases of mistake and misconception, in cases where they actually exist. But we intend no departure from our original ground, and we repeat, that the case under consideration is one, that presents no mistake or misconception. Fraud is not suggested; and it is admitted there is no mistake, either of omission or addition. It is clear, that the parties intended not an ordinary sale or assignment of the vessels in question; yet the plaintiff seeks to have the same effect produced by his powers of attorney, as if a conveyance by grant, bill of sale, or mortgage, had been effected. He contends against his own preference. He asks for that now, which he had offered him, and which he rejected. In the cases that have arisen upon the redeemability of annuities, where the parties, by innocent and mutual error, left out of the deed a provision for redemption, under an idea, that if inserted, it would make the transaction usurious, (there being no charge of fraud in the omission) the court would not admit parol evidence; they could see no mistake. Lord Eldon says, the court were desired to do, not what the parties intended, but something contrary thereto. They desired to be put in the same situation, as if they had been better informed, and had a contrary intention. Marquis of Townshend v. Stangroom, 6 Ves. Jr. 328, 332. It is admitted, that Hunt's security was to be by power of attorney, and why should the court now turn it into a bill of sale, or mortgage, or any security equivalent to these, but more efficient than the powers, and

different from them. Phil. Ev. 451; 1 Brown, Ch. 92; 6 Ves. 332; 2 Brown, Ch. 219; 3 Brown, Ch. 168. This is at best an attempt to explain an agreement, which is inadmissible. Pym v. Blackburn, 3 Ves. 34. It is submitted, that there is a clear analogy between the present case, and those referred to. These cases deprive the respondents' counsel of the honour of inventive ingenuity in framing a new rule of equity, and exonerate them from the opprobrium of advancing as law, what is unfounded in principle, and unsustained by authority.

2. But admitting the existence of a mistake, can the plaintiff claim on that account relief. On this point, the counsel for the plaintiff take sanctuary in the case of Gillespie v. Moon, 2 Johns. Ch. 598. That case was, undoubtedly, correctly determined; but it is humbly submitted, whether it does not present a case of fraud, rather than of mistake; and would it not have been as fortunate, as wise, (having reference to the importance of uniformity of decision) if the learned chancellor had acted upon his expressed doubt, and his first and best impression, and turned that case upon the fraudulent intention and suppression of the truth so obvious in the conduct of the respondent, rather than on the ground of mistake and misconception. The respondent in that case knew from the beginning, that he received, or might receive, by the language of the deed, what the grantor never intended to give; it was a mistake in one, and taking advantage of that mistake was a fraud in the other; a fraud of the meanest nature, properly cognizable under the moral jurisdiction of a court of chancery, and obnoxious to its severest rebuke. It is evident, that the learned chancellor has taken in that case a fearless stride as to doctrine, and has passed by, rather than overthrown, the difficulties, that opposed his progress. He asserts, that the mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence. We contend, that it does not appear in any previous case, that the plaintiff has been allowed to give parol evidence varying a written agreement, on the ground of mistake. Phil. Ev. p. 454. It is admitted by Chancellor Kent, that such proof was rejected by the master of the rolls in Woollam v. Hearn, 7 Ves. 216, and again in Higginson v. Clowes, 15 Ves. 516, and in the case of Clinan v. Cooke, 1 Schoales & L. 39, determined by Lord Redesdale.

"Non nostrum inter vos tantas componere lites."

We do not even intend to set up on the ground of authority, the two great chancery characters of England against the chancellor of New York; but the reasoning, both of the English master of the rolls, and the lord chancellor of Ireland, remain not only unrefuted, but untouched.

The case of Woollam v. Hearn, was determined on great consideration, and is referred to by the best writer on the law of evidence, as placing the doctrine of the courts of equity on this subject in a very distinct and clear point of view. Phil. Ev. p. 455. We are, therefore, not conscious of obtruding a dangerous novelty upon the court, when we assert the difference of right and condition, as to the plaintiff and defendant; of evidence offered for the different purpose of resisting a decree, and that offered for obtaining it. We believe this difference exists in the code of every civilized nation. "Favorabiliores rei, potius quam actores, habentur;" this and other similar maxims are of universal prevalence and uncontradicted reception, and equally applicable in concerns civil and criminal. Both parties are the object of equal protection, but to make that protection equal, a certain position and condition is assigned to the defendant. He is so placed as to be able to resist lawless attack. Bestowing the same rights is not always bestowing equal rights. The law seeks for actual, not nominal, reciprocity. The relative condition of the parties enters into the account. "Even handed justice" first corrects the balance by making the proper allowances, before she weighs the merits of the cause. Looking to the statute of frauds, or to the pre-existing rule of the common law, (a fortiori applicable in the instance of a power of attorney, which cannot exist without deed) we must conclude, that in a case, like this at bar, the defendants are not to be charged, unless they have agreed to be so by writing, and if there is a writing, it excludes the reference to what might have been the previous talk or negotiation. There is a writing or deed produced, which it was pretended did so charge them; and that writing upon its own strength, without the suggestion of mistake or insufficiency, was the foundation of the original bill. It has been decreed, that the writing does not charge them, and here the case ought to end. Having chosen to begin his pursuit on the writing exclusively, and in perfect confidence of its validity as to his attempted purpose, is it competent to the plaintiff by an amendment of his bill, to resort to verbal negotiations, introductory of the final settlement and consummate act between the parties, in which all negotiations were merged beyond the power of revival? Is not this attempt unprecedented, dangerous in the extreme, and subjecting administrators and representatives to the power of a plaintiff, without any possible means of detecting his wrongful statements, or protecting the property they hold in trust for legal distribution.

The court cannot proceed as if the powers of attorney never existed, or as if they were annihilated; they make a fact inherent in the case, and inseparable from it. They cannot raise an equity dehors the deed, because they cannot obliterate the fact of its

existence, and its being the whole foundation of the plaintiff's claim. As to the general contract. we admit it exists; the loan was made; the notes, as undisputed evidence of it, ought to be, and will be, legally paid. The privileged mode of payment, which the plaintiff aspires to, cannot be assented to by the administrators, because it was given by an authority, which ceased with the life of its author, and by consequence is not binding on them. It is unnecessary to remark on the impolicy of permitting a transaction of this kind, so contrary to what ought to be the openness of commercial dealing, and to the entire spirit of the commercial law, which requires publicity in all transfers of property, and possession to accompany a grant, and admits control of the possessor to prove the ownership. Secret letters of attorney granting a power to sell, especially in the case of vessels, without a delivery, without a change of papers, without notice to the government, or to the mercantile public, it is obvious, are fraught with dangerous consequences, and could hardly be supported as against creditors, though the life of the constituent still sustained their existence and efficacy. But to support them after they are expired. and to find from the fact of their having existed merely and in their own invalidity an apology, first to overthrow them, and on that overthrow to erect a firmer fabric of obligation out of the previous verbal negotiations of the party. is a course abhorrent to all the maxims of security and protection inculcated by law. Administrators must necessarily be ignorant of the private verbal communications of the parties, and they are left defenceless and liable to impositions, which can neither be detected nor repelled.

The case of Haynes v. Hare, determined by Lord Loughborough, 1 H. Bl. 664, is, as to many of its facts, and all its legal points, similar to the one now under consideration. The court there said: "It is not necessary to cite any case to prove the proposition, that parol evidence of a parol communication between the parties ought not to be received to add a term. not inferred in the specific agreement, which they have executed; and for this plain reason, that what passed between them in that communication may have been altered and shifted in a variety of ways, but what they have finally signed and sealed was finally settled. It would destroy all trust, it would destroy all security, and lay it open, unless the parties are completely bound by what they have signed and sealed. There is nothing so dangerous as to permit deeds and conveyances after the death of the parties to them, to be liable to have new terms added to them, on the disclosure of the attorney, in a matter in which he could meet with no contradiction." See likewise Poole v. Cabanes. 8 Term R. 328.

This present case is therefore submitted without further argument, or the unneces-sary recapitulation of the points raised, under confidence, that our first view of it was proper and correct, and that the ingenious suggestions of the plaintiff's counsel, though honourable to them, are not hurtful to us; and this confidence is the more confirmed by the consideration, that our arguments are addressed to a member of that high court, which has taken its stand, as to one of the principal questions discussed, on the side of Loughborough, of Redesdale, and Grant, and have frequently expressed a warm and clear opinion against the admissibility of parol testimony, and their regret at the dangerous relaxation of the rule of its exclusion. See U. S. v. Kendall [Case No. 15,518].

STORY, Circuit Justice. This cause has been again argued upon the amended bill, and now stands for judgment. Some doubt has been thrown out in argument, as to the authority of the court to allow an amendment of the bill, after the cause had been decided in favour of the demurrer. I should be sorry, that any doubt of the propriety of such a practice should prevail in any case, where the court should be of opinion, that it was called for by the real merits and justice of the case. If there were a stubborn rule of practice against it, it might induce one to pause. But I know of no such rule; and as far as cases go, they only shew, that the court will exercise its discretion cautiously on applications of this nature. The authority of the court upon general principles seems unquestionable; and if it needed support, it falls within the express language of the judicial act of 1789, c. 20, § 32 [1 Stat. 91], which declares, that the courts of the United States "may at any time permit either of the parties to amend any defect in the process or pleadings, upon such conditions as the courts respectively shall in their discretion and by their rules prescribe."

The substance of the bill remains untouched by the amendment; and the only material fact now added. is, that the parties executed the powers of attorney in the case, under the advice of counsel, that they were as good security as a bill of sale, or mortgage of the property: Here. then, there was no mistake as to the intention of the parties; they did not execute one instrument supposing it to be another; they did not execute a power of attorney, supposing it to be a mortgage or a bill of sale. The papers are exactly what the parties intended; and they expressly waived the execution of any other or farther security. There was, then, no mistake in fact, nor in intention. The only mistake was a mistake in law, in supposing, that a defeasible security was indefeasible. and a letter of attorney irrevocable by the party was perpetual in its obligatory force. and irrevocable in point of law. The question. then, comes shortly to this. whether the court can grant relief in equity, where a security becomes ineffectual, not by the fraud of the parties. or by acci-

dent, or because it is not what it was intended to be, but because the parties have innocently mistaken the law. No case has been cited at the argument, which supports such a doctrine; and the existence of such a case is not to be presumed. It would, I imagine, be a new head in equity, that, because the security chosen by the party turned out in the event to be ineffectual without fraud, therefore a court of equity would substitute a new security, and give the party the same benefit as he might have had, if he had been more vigilant, or had been better instructed in the law. The cases, where relief has been granted upon the ground of mistake, are in general upon mistake as to facts, or where the instrument is not, what the parties in point of fact intended. Bishop v. Church, 2 Ves. Sr. 100; Id. 371; Thomas v. Frazer, 3 Ves. 399; Burn v. Burn, Id. 573; Gray v. Chiswell, 9 Ves. 118, 125; Underhill v. Horwood, 10 Ves. 209, 227, 228; Devaynes v. Noble (Sleech's Case) 1 Mer. 539, 564; Sumner v. Powell, 2 Mer. 30, 36; Ramsbottom v. Gosden, 1 Ves. & B. 165; Jalabert v. Duke of Chandos, 1 Eden, 372; Henkle v. Royal Exchange Assur. Co., 1 Ves. Sr. 317. Lord Eldon in Underhill v. Horwood (10 Ves. 209, 227) said: "I know both in causes, and in bankruptcy, where there is a joint bond, the court has sometimes inferred from the nature of the condition and the transaction, that it was made joint by mistake. But that turns upon this, that the instrument, though joint only, was intended to be both joint and several, and therefore the court will make it what it was intended to be. But I never understood, that though upon the ground of mistake this court would reform the instrument, therefore it would hold, that the instrument has a different effect from that, which belongs to it at law." Lord Thurlow in Irnham v. Child (1 Brown, Ch. 92) refused to add a new term to an agreement upon the ground, that it was omitted intentionally upon a mistake of the law; and the master of the rolls adhered to that in a subsequent determination. Lord Portmore v. Morris, 2 Brown, Ch. 219. Lord Eldon in the Marquis of Townshend v. Stangroom (6 Ves. 328, 332) said: "Lord Irnham v. Child went upon an indisputably clear principle, that the parties did not mean to insert in the agreement a provision for redemption, (of an annuity) because they were all of one mind, that it would be usurious; and they desired the court, not to do what they intended, for the insertion of that provision was directly contrary to their intention; but they desired to be put into the same situation, as if they had been better informed, and consequently had a contrary intention." This language is strongly applicable to the case before the court. Here the parties did not intend to execute a mortgage, for that was waived; but the plaintiff took just such a security as he thought sufficient, upon his own notion of the law; and he now in effect asks the court to give him the same rights, as if he elected a mortgage. Mr. Chancellor Kent has pointedly stated the doctrine, that "courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle, which is safe and practicable in the common intercourse of mankind." Lyon v. Richmond, 2 Johns. Ch. 51, 60.

In every view which I have been able to take of this case, I can perceive no ground for the interference of a court of equity. Here was no mistake in the execution of the instruments. They expressed exactly, what the parties intended they should express. The security was the choice of the plaintiff. In the event it has turned out unproductive; but this is his misfortune, and affords no ground to give him a preference over other creditors. I am of opinion, that the demurrer is well taken, and that the bill ought to be dismissed. Bill dismissed with costs.

[NOTE. An appeal was then taken by the plaintiff to the supreme court, where the decree was reversed in an opinion by Mr. Chief Justice Marshall, who said: "We find no case which we think precisely in point, and are unwilling, where the effect of the instrument is acknowledged to have been entirely misunderstood by both parties, to say that a court of equity is incapable of affording relief." The case, however, being one in which creditors were concerned, the court, instead of giving a final decree for the plaintiff, directed the cause to be remanded so that defendants might withdraw their demurrer and file an answer. As to what is meant by "a power coupled with an interest," it was held that the interest, which will protect a power after the death of the person creating it is one in the thing itself, and not in that which is produced by the exercise of the power. 8 Wheat. (21 U. S.) 174. See, also, Cases Nos. 6,889 and 6,897.]