BENJAMIN F. WEBB *vs.* WILDES P. WALKER & another.

P., the purchaser of one half of a brig, gave W., the seller, his notes for a certain amount of the purchase money, and also a bond, reciting that said amount was to run on bottomry on the said half of the brig, and conditioned to pay the notes at maturity, and stipulating that P. should keep the half of the brig insured, and that, on P.'s failure to pay the notes, W. might sell said half at public auction for payment of the notes and expenses, accounting to P. for any surplus; and P., by the same instrument, appointed W. his attorney, to convey said half to the purchaser at such sale. It was held, that this instrument did not create an equitable lien upon the brig, nor declare a trust which could be enforced as against a subsequent purchaser from P., with or without notice.

THIS was a bill in equity, to enforce a supposed equitable lien or trust upon the brig Caroline, of Newcastle, Maine.

The bill stated that, on the 28th of April, 1846, the plaintiff, being the owner and in possession of one half of said brig, then lying in Boston, contracted to sell that half to one of the defendants, Elias D. Pierce, for the sum of $4,000; for $850 of which Pierce was to have a credit of six months, and for another like sum a credit of twelve months, Pierce securing said sums upon said one half of the brig, which was to be held in trust by Pierce for that purpose; that, on the same day, the plaintiff accordingly gave Pierce a bill of sale of the one half of the brig, and Pierce gave the plaintiff certain promissory notes, amounting in all to $1,700, and payable at the times agreed upon, and also a certain instrument, the substance of which was stated in the bill, which instrument was as follows:

" Know all men by these presents, that I, Elias D. Pierce, of Boston, in the State of Massachusetts, merchant, am held and stand firmly bound unto Benjamin F. Webb, of Newcastle, in the State of Maine, his heirs, executors, and administrators, in the full and just sum of three thousand dollars, to the payment whereof, well and truly to be made, I hereby bind myself, my heirs, executors, and administrators, firmly by these presents.

" Now the condition of this obligation is such, that, whereas the said Benjamin F. Webb has advanced to the said Elias D. Pierce the sum of seventeen hundred dollars, which is to run on bottomry, on one half of the hull and appurtenances of the brig Caroline, of Newcastle, whereof said Pierce is the owner. And, whereas, the said Pierce has given his notes, bearing date the twenty eighth day of this present month, for the sum of eight hundred and fifty dollars, payable in six

months, and the further sum of eight hundred and fifty dollars, payable in twelve months, with interest after six months, to cover the said loan and interest agreed upon, it is hereby understood that if said notes are paid at maturity by the said Pierce, his heirs, executors, or administrators, then this bond is to become void, but otherwise to remain in full force.

" And it is further understood and agreed, that the said Pierce is to keep the said half of said brig insured at his own expense; and that, if he fails to pay his notes at maturity, as aforesaid, then it shall be lawful for the said Benjamin F. Webb to enter upon and take possession of said half of said brig, and the same to sell by public auction, duly advertised, for payment thereof, and of any and all charges he may incur in the premises, he accounting to said Pierce for any surplus which may come into his hands; and in case of sale so made, the said Benjamin F. Webb is hereby appointed the sufficient and lawful attorney of the said Pierce, to convey the said brig to any person who may become the purchaser.

" Witness my hand and seal, at Boston aforesaid, this twenty eighth day of April, in the year of our Lord eighteen hundred and forty six.

Witness, HENRY GYRELAAR."             ELIAS D. PIERCE. [SEAL.]

The bill then alleged, that the effect of the bill of sale from Webb to Pierce, and of the instrument given by Pierce to Webb, was to make Pierce the legal owner of the property, but in trust for Webb, and subject to a lien in favor of Webb, to the amount of $1,700, until said trust and lien should be discharged by the payment of the money; that said instrument did not constitute a bottomry or respondentia bond, but did constitute a special trust: That, on the 30th of April, 1846, Pierce sold and conveyed his half of the brig to the other defendant, Walker; that Walker, before receiving a bill of sale thereof, and before the payment of any consideration therefor, had knowledge of the existence of the instrument above named, of the manner in which Pierce held the property, and of the plaintiff's claim thereon ; and that Walker, therefore, took the property subject to a trust and lien in favor of the plaintiff.

The bill further stated, that the notes for $850, payable in six months, had become due; that the plaintiff, on the day when they became **due**, demanded payment of Pierce, who failed to pay them; whereupon the plaintiff notified Walker thereof, and requested him to pay the notes, or to deliver or convey to him the half of the vessel, that he might enter upon and sell the same, according to the terms of the instrument; that Walker refused to do either, or to permit the

plaintiff to avail himself of his rights under said instrument, in any manner; and that no portion of the $1,700 had been paid.

The prayer of the bill was, that Walker might be ordered to make such bill of sale, delivery, conveyance, or transfer of the property to the plaintiff, to enable him to enter upon and sell the same, according to the terms of said instrument, as to the court should seem meet. There was also a prayer for general relief; and a prayer that Walker might be enjoined against making any sale of the property until the trusts should be performed.

The defendant Pierce did not appear, and the bill was, by order of court, taken for confessed as to him.

The defendant Walker, in his answer, admitted most of the facts stated in the bill, but he denied that, at the time of the sale to him, he had notice of any trust or lien in favor of the complainant, or that he took the property subject to any such trust or lien; and he alleged that he paid Pierce $4,000 for the one half of the brig, being the full value thereof. And he further denied that, if he had full knowledge at the time of his purchase, of the existence and contents of the instrument given by Pierce to the plaintiff, he should have taken the property subject to any trust in favor of the plaintiff, or that the said instrument could or did create any claim or lien in favor of the plaintiff.

The plaintiff filed a general replication.

After the note for $850, payable in twelve months, fell due, the plaintiff filed a supplemental bill, stating the maturity of the note, and a demand of payment of Pierce, his refusal to pay, due notice thereof to Walker, a demand made of the latter to pay the same or deliver or convey the half of the brig to the complainant, and his refusal so to do, in the same manner as in the original bill. And the prayer was similar to that contained in the original bill.

Several depositions were taken by the plaintiff, to prove that Walker, at the time of his purchase, had notice of the trust or lien in favor of the plaintiff, the substance of which, and the objections to their competency, are not material to be stated.

The case was argued at November term 1849.

*C. G. Loring* and *J. C. Dodge*, for the plaintiff.

The instrument given by Pierce to Webb is not a bottomry bond nor a mortgage, and constitutes no legal lien, sale, or pledge. No action will lie upon it at common law or in admiralty. But it does constitute an equitable lien or trust. Lewin on Trusts, 15, 76; *Homes* v. *Crane,* 2 Pick. 607, 610; 2 Story on Eq. §§ 715, 964, 1217 to 1224, 1231, 1251, 1257; *Legard* v. *Hodges,* 1 Ves. Jr. 477; *Collyer* v. *Fallon,* 1 Tur. & Rus. 459, 468; Ex parte *Atkins,* 2 Y. & Col. Exch. 536; *Yeates* v. *Groves,* 1 Ves. Jr. 280; *Fletcher* v. *Morey,* 2 Story, 555, 566; *Safford* v. *Rantoul,* 12 Pick. 233; *Clark* v. *Flint,* 22 Pick. 231; *Hunt* v. *Rousmanier,* 8 Wheat. 174. It was manifestly intended to be a bottomry bond; and as it cannot have effect as such, this court, sitting in equity, should give it effect in such other way as will best carry out the intentions of the parties.

*C. B. Goodrich,* for the defendant Walker, cited *Hunt* v. *Rousmanier,* 2 Mason, 342, and 8 Wheat. 174; Cross on Lien, 192; *Berrington* v. *Evans,* 3 Y. & Col. Exch. 384; *Collyer* v. *Fallon,* 1 Tur. & Rus. 459; *Winslow* v. *Merchants' Ins. Co.* 4 Met. 306, 316; *Legard* v. *Hodges,* 1 Ves. Jr. 478, note; *Dickenson* v. *Phillips,* 1 Barb. 454, 457; *Rogers* v. *Hosack,* 18 Wend. 319; *Busk* v. *Fearon,* 4 East, 319; Ex parte *Heywood,* 2 Rose, 355.

SHAW, C. J. The question for the court is, can this bill be maintained on the ground of trust, or otherwise. The question raised is an interesting one, and has received great consideration from the court.

The parties obviously intended to execute a bottomry bond; but this intention was not carried out. No marine interest was reserved. The vessel was not put at risk, nor did the security of the debt depend upon its safety alone; essential elements of such a bond. The instrument was simply an agreement, that the vendor of certain personal property might resell it upon non-payment of the purchase-money, and pay himself from the proceeds. Can the main intention of the parties be carried into effect notwithstanding this failure; and

did the instrument create such a lien, or declare such a trust, as can be enforced by a bill in equity ? We think not. The stipulation to insure has no effect on the construction of the instrument. As the plaintiff was not to have the benefit of it, it was a clause entirely aside from the main body of the agreement. There are no words of grant, conveyance, pledge, or hypothecation. There is simply a stipulation, that, if one party failed to pay at the time fixed, the other might enter and sell, or might act as his attorney for the sale of the property. Pierce immediately sold to Walker, and when the first note became due, the plaintiff desired to sell, but Walker refused assent, and denied the existence of any vendible interest in Webb. It cannot be upheld as a mortgage, for there was no possession, and no record before the sale. It only gives a power to sell and apply the proceeds to the payment of the notes. This is not a power coupled with an interest, and amounting to an assignment. The vessel must be sold before any proceeds could arise, and it was only in the proceeds, when realized, that the plaintiff had any interest. Such an interest could not defeat Pierce's power to sell and pass the property. When a party has conveyed an interest in the thing itself, with a power to sell and appropriate the proceeds, the grantee takes something more than a naked, revocable power; but when only a power to sell is given, without any interest in the subject matter, except in the proceeds arising from the sale, which interest can only be obtained by execution of the authority, it is otherwise.

This case most resembles that of *Hunt* v. *Rousmanier*, 2 Mason, 342, 8 Wheaton, 174, and 3 Mason, 294. Rousmanier had borrowed money of Hunt, and by way of security gave him a power to sell two vessels, then at sea, and reimburse himself from the proceeds. Rousmanier died before the return of the vessels. Hunt brought his bill in equity, in the circuit court, to have a lien on the vessels declared in his favor, to have the vessels sold, and his debt first paid out of the proceeds. The estate of Rousmanier was insolvent, and the question was between the complainant, relying upon such trust, and the general creditors. Upon a demurrer, judgment

was given for the defendant, on the ground that the power was a naked power, not coupled with an interest in the vessels, and that it terminated with the death of the party who gave it.

On error to the supreme court of the United States, the cause was argued at great length; and, in an opinion given by Marshall, C. J., the court affirmed both the above propositions, namely, first, that a power to sell a vessel and take payment from the proceeds, was a naked power, not coupled with an interest, and so created no assignment; and, second, that, as a naked power, it ceased with the death of the party who gave it; that it created no trust and no assignment, and of course no lien on the vessels. But as that case came up on a demurrer, and it appeared to be stated by the bill, that the agreement was intended to operate as an effectual security for those loans on those vessels; that both parties so intended; and that the powers were therefore given and taken under a mistake; and as that court had jurisdiction in equity to correct a mistake, they reversed the decree of the circuit court, sustaining the demurrer, and remanded the case to the circuit court, with leave to the defendants to withdraw the demurrer and file an answer. The case came again before the circuit court, on the answer and proofs; and it was decided by Story, J., that no such mistake was established, and judgment was given for the defendants.

To the only points applicable to this case, the foregoing is an authority for the defendant, and decides that such a power of attorney, given by an owner, though intended as a security for money, constitutes no assignment, no contract for specific performance, and no trust; and therefore will not sustain a bill in equity in this court.

But it is clear that this court has no jurisdiction in equity to afford relief in cases of mistake, even if a mistake in matter of law merely, where the parties have given and taken the security which they intended, but did it under a mistake of the law, as to its effect and operation, were a proper ground of relief in a court of full equity jurisdiction.

In the present case the parties no doubt intended to give

and receive a bottomry bond, which, if it had been done, would have been a marine contract, giving jurisdiction to the court of admiralty, by process *in rem*, to afford relief; but being made, as conceded, without the requisites of a bottomry bond, it could not be thus enforced.

It is not a mortgage, because there were no words of absolute or conditional transfer, no delivery or record; nor an assignment, because no interest in the property to be sold was coupled with the power to sell; nor a pledge or hypothecation, because attended by no delivery or change of possession. The only remaining question is, whether it was a declaration of·trust. As already stated, the court are of opinion that it was not. It was no more a declaration of trust, binding on third parties, than would be constituted by an agreement of mortgage, pledge, or hypothecation, without delivery, and without change of possession; it might be good against the original party, if he for whose benefit it was made could get peaceable possession; *Bartlett* v. *Williams*, 1 Pick. 288; but could not affect a subsequent purchaser or creditor.

It may be proper to remark, that this power to sell is distinguishable from that class of powers given by wills, which, from the nature of the case, are held to be not revocable by death; and from trust powers derived out of a will; as powers to sell an estate in trust to pay over the proceeds; which must, *ex necessitate*, be executed after death. But this power was given by a mere executory stipulation, *inter vivos*, and was therefore revocable.

Our opinion upon this point renders it unnecessary to go into the discussion of the question, whether Walker purchased with notice, upon which considerable evidence was taken.

*Bill dismissed, with costs for the defendant.*